**In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION.**

No. C 06–04327 JW.

United States District Court, N.D. California, San Jose Division.

March 31, 2008.

Richard Bemporad, David C. Harrison, Barbara Hart and Todd Garber, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, for New York City Pension Funds.

Emily R. Schulman, Jeffrey B. Rudman, Wilmer Cutler Pickering Hale And Dorr LLP, Boston, MA, Jonathan Acker Shapiro and Jeffrey Rudman, Wilmer Cutler Pickering Hale And Dorr LLP, Palo Alto, CA, for Juniper Networks, Inc.

Joni L. Ostler, Niki Locker and Steven Guggenheim, Wilson Sonsini Goodrich & Rosati Professional Corporation, Palo Alto, CA, for Juniper Networks, Inc., Marcel Gani, William R. Hearst, III, Scott Kriens, Stratton Sclavos, Pradeep Sindhu, William R. Stensrud, Robert M. Calderoni, Kenneth Goldman, Vinod Khosla, Kenneth Levy.

David Michael Friedman, Peter Allen Wald, Latham & Watkins, Viviann C. Stapp, San Francisco, CA, Patrick Edward Gibbs, Latham & Watkins LLP, Menlo Park, CA, for Ernst & Young LLP.

James Neil Kramer, Melinda Haag, Mozhgan Saniefar, Rebecca Felice Lubens, Orrick, Herrington & Sutcliffe, LLP, San Francisco, CA, for Lisa C. Berry.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

WARE, District Judge.

### I. INTRODUCTION

This is a putative securities fraud class action brought on behalf of investors who acquired Juniper Networks, Inc. ("Juniper") securities between July 12, 2001 and August 10, 2006 (the "Class Period") against Juniper and certain of Juniper's senior officers and directors (collectively, "Defendants").[1] Plaintiffs allege, *inter alia*, violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and Rule 10b–5 of the Securities and Exchange Commission ("SEC") resulting from Defendants' options backdating practices.

Presently before the Court is Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint. (hereafter, "Motion," Docket Item No. 84.) The Court conducted a hearing on September 10, 2007. Based on the papers submitted to date and oral arguments of counsel, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

### II. BACKGROUND

#### A. Factual Allegations

In an Amended Consolidated Class Action Complaint filed on April 9, 2007,[2] Plaintiffs allege as follows:

---

1. The Individual Defendants are Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert Calderoni, Kenneth Goldman, William Hearst, Stratton Sclavos, Vinod Khosla, Kenneth Levy, William Stensrud. Plaintiffs also allege causes of action against Ernst & Young, LLP. Ernst & Young is not a party to this motion.

2. (*See* Docket Item No. 73.)

Lead Plaintiff is New York City Pension Funds. (ACC ¶ 27.) Defendant Juniper is a internet networking equipment company which makes routers and other equipment that direct data traffic over computer networks; its principal place of business is in Sunnyvale California. (*Id.* ¶ 34.) Defendant Kriens has served as Chief Executive Officer ("CEO") and Chairman of Juniper since October 1996. (*Id.* ¶ 36.) Defendant Sindhu co-founded Juniper in February 1996 and served as CEO and Chairman until September 1996. Since that time, Sindhu has served as Juniper's Chief Technical Officer ("CTO") and as Vice Chairman. (*Id.* ¶ 39.) Defendant Gani served as Juniper's Chief Financial Officer ("CFO") from February 1997 and as Executive Vice President and CFO of the Company from July 2002 through December 31, 2004. Beginning January 1, 2005, Gani assumed the position of Juniper's Chief of Staff. (*Id.* ¶ 42.) The other directors who sat on the board and me accounting firm Juniper had as an independent auditor during the relevant time period are also named as Defendants. (*Id.* ¶¶ 46–56.) Defendants materially misrepresented and concealed backdating and other accounting improprieties regarding the option grants Juniper issued during the Class Period. (*Id.* 110.)

On August 10, 2006, Juniper admitted that it would have to restate financial results from 2003 through March 2006. (*Id.* ¶ 15.) On December 20, 2006, Juniper admitted that it would incur a $900 million expense as a result of correcting the improper accounting of its option grants. (*Id.* ¶ 17.)

**B. *Stock Option Granting, Dating and Pricing***

A stock option granted to an employee of a corporation allows the employee to purchase at some future date a specified number of shares of corporate stock at a specified price, called the "exercise price." If the exercise price is the same as the market price of the stock on the date the option is granted, the option is said to be "at-the-money." Under Generally Accepted Accounting Principles ("GAAP"), a company that grants an option "at-the-money" is not required to record the grants as compensation expenses. On the other hand, if the exercise price of the option is less than the market price of the stock on the date the option is granted, the options is said to be "in-the-money." Under GAAP, the company must record a compensation expense for the "in-the-money" option grant, equal to the difference between the exercise price and the market price of the stock on the date the option is granted. Walter L. Lukken and James A. Overdahl, Financial Product Fundamentals: A Guide for Lawyers § 18:2 (5th ed.2004).

**C. *Stock Option Backdating***

"Stock option backdating" is a phrase that describes a practice in which the record of the option grant deviates from the actual grant date. A stock option is said to have been "backdated" if it was actually granted on one date, but the option itself is dated and is "recorded" on the books of the company as granted on an earlier date. Backdating a stock option is not necessarily improper. Backdating may be improper, however, if the practice misleads shareholders. For example, if the grant date of a stock option to an employee is backdated to a date when the market price was lower man the market price on the actual grant date, the option would be "in-the-money." If the company does not record and report a compensation expense as required by GAAP, any subsequently issued financial statement would be misleading. *See* 6 Bromberg & Lowenfels on Securities Fraud § 17:1 (2d ed.2007).

### D. *Procedural History*

On July 14, 2006, Robert Garber filed a Complaint (the "Garber Complaint") on behalf of himself and all those who acquired Juniper securities between September 1, 2003 and May 22, 2006. On November 20, 2006, the Garber Complaint was consolidated with other cases filed against Juniper and the Individual Defendants.

The operative complaint is the Amended Consolidated Class Action Complaint, in which Plaintiffs allege the following six causes of action: (1) Making false and misleading statements regarding Juniper's options granting practices in violation of § 10(b) of the Exchange Act and SEC Rule 10b–5 against Juniper, Kriens, Sindhu, and Gani; (2) Control person liability under § 20(a) of the Exchange Act for § 10(b) violations against the Individual Defendants; (3) Submitting false registration statements related to the Netscreen Registration statement in violation of § 11 of the Securities Act against all Defendants; (4) Control person liability under § 15 of the Securities Act for § 11 violations related to the Netscreen Registration against the Individual Defendants; (5) Submitting false registration statements related to the 2003 Notes Offering in violation of § 11 of the Securities Act against all Defendants except Calderoni, and Goldman; and (6) Control person liability under § 15 of the Securities Act for § 11 violations related the 2003 Notes Offering against the Individual Defendants except Calderoni and Goldman

Presently before the Court is Defendants' motion to dismiss.

### III. STANDARDS

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–534 (9th Cir.1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

■ However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also, McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir.2000).

■ Claims brought under § 10(b) of the Exchange Act and Rule 10b–5 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). *In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006, 1014 (9th Cir.2005). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

■ Moreover, claims brought under § 10(b) and Rule 10b–5 must also meet the stringent pleading standards of the Private Securities Litigation Reform Act of 1995.

**1046**

To plead a violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). The PSLRA amends the Exchange Act to require that a private securities fraud litigation complaint "plead with particularity both falsity and scienter." *In re Daou*, 411 F.3d at 1014. Specifically, a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir.2002).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' § 10(b) claim, false registration statement claims under § 11, and control person liability claims under §§ 15 and 20 on the grounds that Plaintiffs have failed to meet the pleading standards to state these claims. (Motion at 7, 27, 30.) The Court considers each claim in turn.

### A. *Section 10(b) Claim*

Defendants move to dismiss Plaintiffs' § 10(b) claim on the grounds that Plaintiffs have failed to adequately plead scienter and loss causation. In the alternative, Defendants move to dismiss Plaintiffs' § 10(b) claim on the ground that it is time-barred to the extent it is based on statements made prior to July 14, 2001. (Motion at 7–26.) The Court addresses each issue in turn.

### 1. Scienter Allegations

In dispute is whether Plaintiffs have adequately pleaded scienter with respect to Defendants Kriens, Sindhu, and Gani. (ACC at 95.)

Congress enacted the PSLRA to "deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973 (9th Cir.1999). Post–PSLRA, a plaintiff must allege with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind regarding each act or omission. 15 U.S.C. § 78u–4(b)(2).

The Supreme Court has described the required state of mind as "scienter," which is the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Ninth Circuit, recklessness (as a form of intentional conduct) has long sufficed to establish scienter for § 10(b) purposes. *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978). In determining whether a plaintiff has adequately pleaded scienter, a court must consider whether the totality of the plaintiffs allegations, although individually lacking, gives rise to the "strong inference" required by the PSLRA. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir.2004).

While Congress has not further defined the "strong inference" requirement, the Supreme Court recently clarified it. Whether a plaintiff has alleged facts giving rise to a "strong inference" of scienter, depends on both (1) plausible nonculpable explanations for the defendant's conduct; and (2) inferences favoring the plaintiff. *Tellabs, Inc. v. Ma-*

*kor Issues & Rights, Ltd.*, 551 U.S. ——, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007). Evidence of scienter must be more than merely "reasonable" or "permissible"—it must be "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* This is because "[a]n inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." *Id.*

 In the options backdating context, allegations that a defendant holds a high executive position, without more, do not support a strong inference of scienter. *See In re Ditech Networks, Inc. Derivative Litigation*, 2007 WL 2070300, *6 (N.D.Cal. 2007); *In re Zoran*, 511 F.Supp.2d 986, 1013 (N.D.Cal.2007). On the other hand, allegations that the defendant signed false financial documents, approved options grants, oversaw the options granting process, or was intimately involved in deciding when and to whom options would be granted may support a strong inference of scienter. *In re Zoran*, 511 F.Supp.2d at 1013.

 In this case, Plaintiffs' allegations against Kriens, Gani, and Sindhu are as follows:

> Kriens, Gani, and Sindhu participated in the issuance of and signed Juniper's false and misleading SEC filings during the Class Period. (ACC ¶¶ 36–42.) Due to their positions as executives and members of the board, Kriens, Gani, and Sindhu knew or recklessly disregarded that Juniper had issued backdated options. (*Id.* ¶¶ 38–44). The backdated options caused Juniper to overstate revenue by almost $900 million. (*Id.* ¶ 13.)

The Court can infer some scienter from Plaintiffs' allegation that Kriens, Gani, and Sindhu participated in the issuance of and signed Juniper's false and misleading SEC filings during the Class Period. However, this inference is not sufficiently cogent without particularized facts to support the inference that Kriens, Gani, and Sindhu knew the statements they signed were false and misleading. Plaintiffs attempts to plead around this requirement by alleging that scienter may be inferred because these Individual Defendants held high executive positions. While the roles of Kriens and Gani, as the CEO and CFO of Juniper, respectively, seem to support an inference of scienter because each of these positions entails the responsibility to oversee accounting and compensation issues within a company, allegations that Defendants held high executive office, without more, are not enough to support a strong inference of scienter. This is especially true regarding Sindhu, since his role as CTO did not necessarily put him in a position to know whether Juniper was properly accounting for its option grants.

Also relevant to the Court's analysis of scienter is Plaintiffs' allegation that these Individual Defendants received backdated options; Plaintiffs allege as follows:

> Kriens received 3,550,000 backdated stock options and sold approximately 7,000,000 shares of Juniper stock reaping proceeds of approximately $131 million. (ACC ¶ 37.) Gani received 1,580,000 backdated stock options, exercised 300,000 backdated options, and sold shares for approximately $3.9 million profit. (*Id.* ¶ 43.) Sindhu received 1,780,000 backdated stock options and sold approximately 3,400,000 shares of Juniper stock, reaping proceeds of more $73 million.

While Plaintiffs allege that Kriens, Gani, and Sindhu each received backdated options, Plaintiffs fail to allege that they knew their options were backdated when they received them. The size of the grants that Kriens, Gani, and Sindhu received supports an inference that they had knowledge of and participated in the back-

dating of the options because they had a significant financial interest in doing so.

The opposing inference is that Kriens, Gani, and Sindhu did not know that the backdated options were not properly accounted for or that they might be subject to liability for backdating stock without properly accounting for it. To refute this inference with respect to Kriens and Gani, Plaintiffs further allege as follows:

> Kriens and Gani represented that they designed or caused to be designed sufficient disclosure controls to ensure that they were provided with material information relating to Juniper and that the financial reporting of Juniper was reliable. (*Id.* ¶ 317.) Kriens and Gani signed certifications pursuant to SOX, which were included in Juniper's Forms 10–K and 10–Q from 2Q02 through 1Q06, certifying the accuracy of Juniper's financial statements and the effectiveness of its internal controls regarding financial reporting for stock option grants. (*Id.* ¶ 316.) Kriens admitted in the December 20, 2006 press release that contrary to his and Gani's direct oversight responsibility of the Stock Option Committee and their repeated certifications under SOX that, in fact, there were material weaknesses in Juniper's "option granting processes, controls and oversight" extending back to 1999. (*Id.* ¶ 305.) These circumstances give rise to a strong inference that Kriens and Gani knew or were reckless in not knowing that employee and executive stock options were being granted without formal Board of Directors or Compensation Committee approval and were inconsistent with the internal policies and procedures established by the Board of Directors or Compensation Committee for granting stock options, and that the Company's disclosure controls and procedures were insufficient to detect and prevent this continuing misconduct. (*Id.* ¶ 319.)

This section of the Amended Consolidated Class Action Complaint, labeled "Additional Scienter Allegations," alleges more than that Kriens and Gani held high executive positions. Rather, it alleges (1) that Kriens and Gani signed false financial documents, (2) that they knew or were reckless in not knowing that these documents were false, and (3) that they placed themselves in a position of oversight over Juniper's options granting practices such that they knew or were reckless in not knowing that options were being granted inconsistent with the representations in the financial documents. Accordingly, the Court DENIES Defendants' motion to dismiss Kriens and Gani on the ground that Plaintiffs have inadequately pleaded scienter.

The Court finds that these allegations are sufficient to support a strong inference of scienter as to Kriens and Gani, which outweighs the opposing inference noted above. However, this section of the Amended Consolidated Class Action Complaint does not add any further allegations with respect to Sindhu. Since the inference that the CTO of Juniper would not have responsibility or control over the grant of employee stock options is significant, the Court finds that Plaintiffs have insufficiently alleged that Sindhu had the requisite scienter. Accordingly, the Court GRANTS Defendants' motion to dismiss Sindhu, with leave to amend.

### 2. Loss Causation Allegations

In dispute is whether Plaintiffs have adequately pleaded loss causation with respect to the alleged conduct of Defendants. (Motion at 22.)

 To plead loss causation adequately, a plaintiff must allege a causal connection between a defendant's material misrepresentation and the plaintiff's loss; that is, the "misstatement or omission concealed something from the market that,

when disclosed, negatively affected the value of the security." 15 U.S.C. § 78u–4(b)(4); *Dura*, 544 U.S. at 341, 125 S.Ct. 1627; *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2nd Cir.2005). The plaintiff "must allege ... that the *subject* of the fraudulent statement or omission was the cause of the actual loss." *Lentell*, 396 F.3d at 173 (quoting *Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87, 95 (2nd Cir.2001) (emphasis in original)).

■■■■■ While it appears that a plaintiff's allegations of loss causation need only meet the pleading requirements of Rule 8(a)(2), the allegations must still provide the defendant fair notice of the grounds upon which the plaintiff's claim rests. *Dura*, 544 U.S. at 347, 125 S.Ct. 1627. Thus, if the plaintiff alleges a fraud on the market, a mere allegation of an inflated purchase price is not sufficient to plead the fraud constituted or proximately caused a relevant economic loss. *Id.* at 342–43, 125 S.Ct. 1627. Pleading loss causation under the fraud on market theory requires a plaintiff to (1) identify the fraudulent statement that causes the stock price to increase, (2) identify the statements or acts which revealed to the market that the statement was fraudulent, and (3) show a decline in stock price after the revelation. *See id.* at 346, 125 S.Ct. 1627; *In re Daou,* 411 F.3d at 1025–26.

■■■ With respect to loss causation, Plaintiffs allege as follows:

Juniper's financial results for 1999 through March 31, 2006 were included in reports filed with the SEC, including Forms 10–K and 10–Q, and registration statements. (ACC ¶ 125.) These statements were certified during the Class Period beginning in the second quarter of 2002, in accordance with SOX. By certifying those public filings, Defendants misrepresented *inter alia*, that Juniper's financial statements were ac-

curate and that the Company had effective internal financial controls to foster the development and preparation of reliable financial statements. (*Id.* ¶ 126.) The revelation of Juniper's backdating practice caused the stock price to fall significantly from the initial disclosure of potential option accounting irregularities to the final admission of identified irregularities. (*Id.* ¶ 339.) Following the reports that identified Juniper as a high risk for options backdating, Juniper's stock price fell from 16.87 on May 17, 2006 to 15.06 on May 19, 2006. (*Id.* ¶ 277.) Several business publications linked the decline in stock price to concerns over options backdating. (*Id.* ¶ 280.) Following Juniper's announcements on August 10, 2006 that the Company's prior financial statements could not be relied upon, Juniper's stock price fell from $12.90 on August 10, 2006 to $12.20 on August 11, 2006. (*Id.* ¶ 283.)

The above allegations identify that (1) Juniper made fraudulent representations to the market concerning the accuracy of its financial statements, (2) certain statements and reports concerning Juniper's involvement in backdating stock options revealed the falsity of Juniper's prior representations, and (3) declines in Juniper's stock price followed the revelations that Juniper's representations were fraudulent. The Court finds that Plaintiffs' allegations sufficiently plead a fraud on the market theory under *Dura.*

Defendants contend that the declines in May and August, 2006 were reflected by general market conditions and not revelations of backdating because Juniper's stock had been declining since February 2005. (Motion at 26.) While it may be true that other factors contributed to the decline in the price of Juniper's stock, Plaintiffs' allegations give Defendants fair notice of the grounds upon which their § 10(b) claim rests. Accordingly, the Court DEMES

Defendants' motion to dismiss on the ground that Plaintiffs have inadequately pleaded loss causation.

### 3. Statutes of Limitations

Defendants move to dismiss Plaintiffs' § 10(b) claim on the ground that it is time-barred to the extent it is based on statements made prior to July 14, 2001. (Motion at 26.)

■■■■ If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980). This is true even though expiration of the limitations period is an affirmative defense because Federal Rule of Civil Procedure Rule 9(f) "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir.1950).

■■■■ Under the Sarbanes–Oxley Act of 2002, the statute of limitations for a claim brought under § 10(b) is two years from the discovery of facts constituting the violation but no more than five years from the date of the violation. 28 U.S.C. 1658(b)(1)(2).[3] The two-year statute of limitations is not subject to equitable tolling. *See Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136–37 (9th Cir.1993). The

five-year outer limitations period in a § 10(b) claim serves as a statute of repose[4] in lieu of equitable tolling. *See Lampf*, 501 U.S. at 363, 111 S.Ct. 2773 (construing the former statute, which imposed a one and three-year limitation).

■■■■ In a § 10(b) claim proceeding under a theory that a loss is linked to the making of a false representation, a plaintiff must show reliance on either: (1) an untrue statement of material fact; or (2) a material omission by one who had a duty to disclose. *See* 17 C.F.R. § 240.10b–5(b). Such a violation is considered to have occurred on the date that the false representation was made, not the date of the conduct which gave rise the representation. *See Lampf*, 501 U.S. at 364, 111 S.Ct. 2773; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F.Supp. 584, 605 (D.N.J.1996). This is especially true for a securities case based on a "fraud on the market" theory because proof that investors in the market relied on an allegedly false representation is presumed only when the representation is publicly disclosed, e.g., through a financial statement such as a Form 10–K.[5]

■■■■ Thus, the two-year statute of limitations period begins to run on one of the following two dates: (1) the date the investor has actual notice that the representation is false; or (2) the date the investor, with some form of reasonable diligence, would have been placed on inquiry

---

**3.** In 2002, Congress passed the Sarbanes–Oxley Act extending the statute of limitations for § 10(b) actions. Pub.L. No. 107–204, 116 Stat. 745 (2002), codified in part at 28 U.S.C. § 1658(b).

**4.** "A statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation." *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir.2003) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)).

**5.** *See Stoneridge Inv. Partners, LLC v. Scientific–Atlanta*, —— U.S. ——, 128 S.Ct. 761, 769, 169 L.Ed.2d 627 (2008). In the context of an options backdating case based on a fraud on the market theory, this means the backdating of an option grant, in and of itself, does not give rise to the violation. Rather, the violation occurs when a false representation concerning the option grant is publicly disclosed because it is only at that point that investors reliance may be presumed. *Cf. id.*

notice. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir.2005). However, the five-year statute of limitations period begins to run on the date of the false representation. *See Lampf*, 501 U.S. at 364, 111 S.Ct. 2773; *In re Prudential*, 975 F.Supp. at 605. Each false representation may constitute a separate violation of § 10(b); the five-year period begins to run with respect to each violation when it occurs. *In re Zoran Corp. Derivative Litigation*, 511 F.Supp.2d 986, 1014 (N.D.Cal.2007). A plaintiff may not recover for reliance on representations made prior to the five-year statute of limitations period under a theory of continuing wrong. *Id.*

■■■ In this case, Plaintiffs allege § 10(b) claims using a fraud on the market theory. (ACC ¶¶ 125–26, 277–83, 339.) Since this case involves allegedly secret backdating practices, which an ordinary investor would not be expected to discover, the two-year statute of limitations period did not start to run until these practices were allegedly revealed;[6] here, as early as May 17, 2006. (*Id.*) The first derivative action against Juniper was filed on July 14, 2006 by Robert Garber, which became the lead case in this Consolidated Action. (*See* Docket Item No. 1.) Accordingly, the Court finds that the two-year statute of limitations does not bar any part of Plaintiffs' § 10(b) claim. However, since the five-year statute of limitations period began on July 14, 2001, the Court finds that Plaintiffs' § 10(b) claim may not be based on any allegedly false statements made prior to that date.

■■■ Plaintiffs contend that Defendants' violations may be predicated on any false statement for which a loss was suffered after July 14, 2001, citing *In re Mikohn Gaming Corp. Sec. Litig.*, 2006

WL 2547095 (D.Nev.2006) and *In re Quintel Entertainment Inc. Sec. Litig.*, 72 F.Supp.2d 283 (S.D.N.Y.1999). However. *Mikohn* and *Quintel* are distinguishable because they dealt with statements made prior to the class period, not prior to the repose period. *Lampf* and *In re Prudential* make it clear that any part of Plaintiffs' § 10(b) claim based on pre-repose period representations is barred even if the injury did not occur until after period began. *Lampf*, 501 U.S. at 364, 111 S.Ct. 2773; *In re Prudential*, 975 F.Supp. at 605.

Accordingly, the Court dismisses Plaintiffs' § 10(b) claim to the extent it is based on representations made prior to July 14, 2001.

**B. *Sections 11 and 15 Claims***

Defendants move to dismiss Plaintiffs' § 11 and § 15 claims on the grounds that (1) Plaintiffs lack standing and (2) they are time-barred. (Motion at 27.)

■■■ Section 11 of the Securities Act provides for a cause of action against, *inter alia*, signers of the registration statement and directors, for an untrue statement of a material fact or an omission of a material fact in a registration statement. 15 U.S.C. § 77k. "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou*, 411 F.3d at 1027 (quoting *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir.1996)) (internal quotations omitted).

For these claims, Plaintiffs' allege that Defendants submitted false registration

**6.** *See In re Zoran*, 511 F.Supp.2d at 1014 (finding that investors cannot detect secret backdating inside a company, so the two-year statute of limitations does not apply).

statements to the SEC on November 20, 2003 for the issuance of Zero Coupon Convertible Senior Notes ("Notes Offering"). (ACC ¶ 185.) The Court proceeds to consider whether based on these allegations, Plaintiffs have standing to bring §§ 11 and 15 claims, and whether these claims are time-barred.

### 1. Standing

In dispute is whether Plaintiffs has standing to assert claims based on the Notes Offering because the Plaintiffs do not allege they purchased such notes.

■■■ Plaintiffs with a valid securities claim may represent the interests of purchasers of other types of securities in a class action where the alleged harm stems from the same allegedly improper conduct. *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882 (C.D.Cal.2005); *In re MobileMedia Sec. Litig.*, 28 F.Supp.2d 901 (D.N.J. 1998). "Concerns over whether stock purchasers should represent notes purchasers are better addressed at the time of class certification." *In re DDi*, 2005 WL 3090882 at *6.

■■■ With respect to the Notes, Plaintiffs allege:

On November 20, 2003, Juniper issued $400 million principal amount of Notes pursuant to the Notes Registration Statement. (ACC ¶ 185.) The Notes were initially issued in private placement in May and June 2003 which were exempt from registration under SEC Rule 144A. (*Id.*) The notes were subsequently registered pursuant to a Notes Registration Statement filed on November 20, 2003 and then sold to public investors. (*Id.*) The Notes Registration Statement incorporates by reference Juniper's financial statements for 2002 and the first three quarters of 2003. (*Id.* ¶ 188.) In its 2006 annual report, Juniper restated its financial results for 2002 and 2003. (*Id.* ¶ 190.)

As alleged, purchasers of the 2003 Notes trace their injury to the false financial statements incorporated into the 2003 Notes Registration Statement. The Notes Registration Statement is not the basis for a claim because the source of the injury to the noteholders arises not from the Notes Registration Statement itself, but from the false financial statements referenced by the Notes Registration Statement.

Accordingly, the Court finds that Plaintiffs have standing to represent the noteholders' claims because Plaintiffs' claims are based on allegations of improper conduct in issuing the same false financial statements upon which the noteholders' claim would be based.

### 2. Time Bar

In dispute is whether Plaintiffs' claims based on the Notes Offering are time-barred because Noteholders were not named as Plaintiffs until April 2007. (Defendants' Motion at 28.)

■■■ Section 11 and Section 15 claims must be brought no more than 3 years after the security offering at issue. 15 U.S.C. § 77m. An amended complaint adding a party plaintiff relates back only when (1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; and (2) there is an identity of interests between the original and newly proposed plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir.1996).

■■■ The Notes Registration Statement was filed on November 2003. (ACC ¶ 185.) The Garber Complaint was filed on July 14, 2006. (*See* Docket Item No. 1.) Although the noteholders were not added by name until April 2007, when Plaintiffs filed the Amended Consolidated Class Action Complaint, the Garber Complaint was filed on behalf of all those who purchased Juni-

per "securities," not just stocks. The Convertible Notes at issue are securities. 15 U.S.C. § 77b. Therefore, the Garber Complaint put Defendants on notice that anyone who relied on the allegedly false financial statements and purchased Juniper securities would be included in Plaintiffs' action.

Accordingly, the Court finds that Plaintiffs' claims based on the Notes Offering are not time-barred.

### C. Control Person Claims

Defendants move to dismiss Plaintiffs' control person claims under § 20(a) of the Exchange Act and § 15 of the Securities Act on the ground that Plaintiffs have failed to adequately allege a primary violation. (Motion at 30.)

Under § 20(a) of the Exchange Act, any person who controls a person liable for violating § 10(b) is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). Similarly, under § 15 of the Securities Act, any person who controls a person liable for violating § 11 is jointly and severally liable for the violation. 15 U.S.C. § 77o.

■■■ In the Ninth Circuit, to state a claim for control person liability, a plaintiff must allege that: "(1) the defendant had the power to influence or control the primary violator and (2) the defendant actively used this influence or control so as to be a 'culpable participant' in the primary violation." *Knollenberg v. Harmonic, Inc.,* 152 Fed.Appx. 674, 685 (9th Cir.2005); *see also Howard v. Everex Sys.,* 228 F.3d 1057, 1065 (9th Cir.2000) (citation omitted). A plaintiff must allege more than the defendant's position and committee membership. *In re GlenFed Securities Litig.,* 60 F.3d 591, 593 (9th Cir.1995). "A director is not automatically liable as a controlling person. There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Bur-*

*gess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984).

The Court has already determined that the Amended Consolidated Class Action Complaint adequately pleads Plaintiffs' § 10(b) and § 11 claims. Therefore, the Court proceeds to consider whether Plaintiffs have otherwise stated the elements of control person liability based on those claims.

■■■ With respect to their § 20(a) claim, Plaintiffs allege as follows:

The Individual Defendants, through their positions of control and authority as officers and directors of the Company, were able to and did control, directly and indirectly, the content of the public statements disseminated by the Company, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Juniper's business affairs. (ACC ¶ 356.) By reason of their management positions and/or control of the Board of Directors, the Individual Defendants were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to direct the management and the activities of the Company and its employees, and to cause the Company to engage in the unlawful conduct complained of herein. Because of their executive, officer and director positions within Juniper and control of the Board of Directors of Juniper, the Individual Defendants had access to adverse nonpublic financial information about the Company and acted to conceal the same, or knowingly or recklessly authorized and approved the concealment of the same. (*Id.* ¶ 360.)

■■■ With respect to their § 15 claims, Plaintiffs further allege:

**1054**

The Individual Defendants at all relevant times participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Juniper's business affairs. (*Id.* ¶¶ 376, 394.) Because of their positions of control and authority as senior officers and directors of Juniper, the Individual Defendants were able to, and did, control the contents of the NetScreen Registration Statement which Juniper has admitted contained materially false financial information thereby constituting violations of § 11 of the 1933 Act. The Individual Defendants therefore were "controlling persons" of Juniper within the meaning of § 15 of the 1933 Act. (*Id.* ¶¶ 378, 396.) These allegations essentially state that Defendants had the power to influence or control the primary violators and actively used this influence or control so as to be a culpable participant in the primary violation. Under Ninth Circuit precedent, "[a plaintiff] need not show that the defendant was a culpable participant in the violation, but defendant may assert a 'good faith' defense." *Howard*, 228 F.3d at 1065 (quoting *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir.1990)). Thus, Plaintiffs need not show culpability on the part of the Individual Defendants; their culpability and corresponding particularity arguments are properly asserted in Defendants' Answer, not a 12(b)(6) motion.

Accordingly, the Court finds that Plaintiffs have properly alleged control person liability with regard to the Individual Defendants.

### V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss as follows:

(1) Plaintiffs' First Cause of Action for securities fraud under § 10(b) against Defendant Sindhu is DISMISSED with leave to amend.

(2) Plaintiffs' § 10(b) claim is DISMISSED with prejudice as time-barred to the extent it is based on representations made prior to July 14, 2001.

Plaintiffs shall file an Amended Complaint on or before **May 1, 2008.** The Court sets a Case Management Conference for **June 2, 2008 at 10 a.m.** Pursuant to the Civil Local Rules of Court, the parties shall file a Joint Case Management Conference on or before **May 23, 2008.**